UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERALD GREGOR and CAROLYN GREGOR,<br><br>    Plaintiffs,<br><br>    v.<br><br>TD BANK, N.A. and BANK OF AMERICA,<br><br>    Defendants. | Civ. No. 21-05255 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the Court on the appeal, by Gerald Gregor and Carolyn Gregor ("Plaintiffs"), of Magistrate Judge Edward S. Kiel's December 14, 2021 Order (DE 42) denying the Plaintiffs' motion for leave to file a second amended complaint ("2AC"). For the reasons provided herein, the Court **AFFIRMS** Judge Kiel's December 14 Order.

## I. BACKGROUND

    Because I write for the parties, familiarity with the matter is presumed. I refer in particular to my opinion of October 1, 2021, in which (1) the motion of TD Bank, N.A. ("TD Bank") to dismiss the (first) amended complaint was granted as to the federal-law claims (Counts 1 and 2); (2) the remaining state-law claims were dismissed because the Court declined to exercise supplemental jurisdiction over them; and (3) the motions TD Bank and Bank of America, N.A. ("BoA") to dismiss, insofar as they sought dismissal of the state-law claims, were dismissed as moot, without prejudice. (DE 31.)[1]

### A. The Original Factual Allegations

    On July 1, 2020, Plaintiff Carolyn Gregor sought technical assistance for her laptop from an individual, later revealed to be a fraudster, who identified

---

[1] "DE __" refers to the docket entry numbers in this case. "2AC" refers to the proposed second amended case, located at DE 36-2, Ex. A.

himself as an Apple employee. (2AC ¶1.) The fraudster originally collected a charge of $2.99, but later stated that he would refund the charge because additional laptop memory was not required. (2AC ¶¶1-2.) Subsequently, the fraudster claimed to have transferred not $2.99, but $29,999, in error to the Gregors' TD Bank checking account. (2AC ¶¶1-3.) The fraudster requested that Carolyn Gregor pay back the mistaken amount by wire transfer to a BoA account under the name of "Michael E. Molin." (2AC ¶3.)

Apparently, that same day (July 1, 2020), at 3:51 PM, Plaintiffs went to their local TD Bank to effectuate a wire transfer of $29,470 from their TD account to the BoA "Molin" account number provided by the fraudster. (2AC ¶4.) Upon returning home, however, Plaintiffs discovered that the at-issue funds had been deposited to their account, not from an external source, but from the Plaintiffs' own TD Bank home equity line of credit ("HELOC"). (2AC ¶¶5-6.) Plaintiffs allege that this transfer occurred "without the authorization, knowledge or consent of Plaintiffs." (2AC ¶6.)

Plaintiffs "immediately" went back to their local TD Bank and spoke with Ronnell McDaniel, Branch Manager and Vice President. (2AC ¶7.) TD Bank issued a notice of recall of the transfer to the BoA account at 4:18 pm. (2AC ¶¶7.) Ultimately, it was too late, as the fraudster was able to withdraw the wired funds from BoA. (2AC ¶8.)

### B. New Factual Allegations

The proposed 2AC, filed after this Court dismissed the Amended Complaint, contains new allegations. (2AC ¶¶10-17.)  Plaintiffs argue that these new allegations correct the pleading deficiencies identified by this Court, which resulted in the dismissal of the Amended Complaint.

Plaintiffs allege that they "received two statements from Defendant TD Bank which first showed the illegal transfer of funds from their HELOC account to their joint checking account." (2AC ¶10.) With respect to these two statements:

- One statement was for the checking account. This statement is not dated, but it covers the period from June 24, 2020 to July 23, 2020. The illegal transfer, made on July 1, 2020, is reflected on this statement. Plaintiffs do not recall when they received this statement. (2AC ¶11.)
- The second statement is for the HELOC account. It is dated August 13, 2020. Plaintiff allegedly received this statement on September 17, 2020. This is the first statement Plaintiff received for the HELOC account which showed the $29,999 increase in principal balance. (2AC ¶12.)
- This [August 13, 2020] statement has a new account number ending in 4331. TD changed the account number after the illegal transfer. This statement shows a new balance of $120,416.13. The only previous statement Plaintiffs received for the HELOC account had an ending balance of $91,260.43 and is dated June 12, 2020. Plaintiffs allegedly never received a July statement for the HELOC account. (2AC ¶13.)

Gerald Gregor allegedly "called TD Bank's Loan Department about the fact they had not received a July statement." (2AC ¶14.) Plaintiffs claim that in response, TD Bank sent a "letter dated October 5, 2020, with two statements for account 4331-one dated September 12, 2020 and the other being the August 13, 2020." (2AC ¶14.) Moreover, John Petriello, Plaintiffs' attorney, "wrote to TD Bank on September 21, 2020, to provide a written notice of Plaintiffs' claim." (2AC ¶15.)

According to the 2AC, the Plaintiffs had previously spoken with TD Bank before Petriello's September 21, 2020 letter. (2AC ¶16.) Plaintiffs allege that during July and August 2020, "Gerald Gregor had telephone conversations with Ronell T. McDaniel, Vice-President and manager of TD Bank's branch, and Frank Perrone, Senior Investigator in the Fraud Department at TD Bank." (2AC ¶16.) Nevertheless, Plaintiffs claim that they "never received any decision about

3

their claim from TD Bank until Plaintiffs received correspondence on September 23, 2020 ,from Mr. Perrone in which he denied Plaintiffs' claim." (2AC ¶17.)

Finally, Plaintiffs add additional allegations to Count 2 (Fair Credit Billing Act ("FCBA")) and Count 3 (Violation of Federal Regulation Z). Plaintiffs allege in Count 2 that, "Plaintiff has provided the notice to TD Bank required by 15 U.S.C. § 1666(a)" (2AC ¶29), and allege in Count 3 that, "Plaintiff has provided the notice to TD Bank required by 12 CFR § 1026.13 (b)(1)." (2AC ¶34.)

## II. DISCUSSION

### A. Standard of Review

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court. 28 U.S.C. § 636(b)(1)(A). In considering an appeal of a non-dispositive order by a Magistrate Judge, a district court will modify or vacate an order only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). By contrast, a district court's review of a dispositive order is *de novo*.

Plaintiffs contend that this Court should review Judge Kiel's decision for clear error, characterizing his order as non-dispositive. (DE 43 at 8.) TD Bank agrees with this standard of review.[2] Because "[a] motion for leave to amend is not among those matters listed as dispositive" under § 636(b)(1)(A), it is a "nondispositive" motion, which is reviewed by district courts for clear error. *Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998).[3]

---

[2] BoA in its letter brief takes no position on the standard of review governing Plaintiffs' appeal.

[3] Neither party has claimed that this appeal presents the scenario in which a Magistrate Judge's decision on "a motion to amend … in practice result[ed] in dismissal," which presents a closer question with respect to the standard of review. *See Kenny v. United States*, 489 F. App'x 628, 630 n.2 (3d Cir. 2012) ("But neither we nor our sister circuits appear to have resolved the precise issue here—whether a motion to amend that in practice results in dismissal is a dispositive motion—and the

4

"A Magistrate Judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A [ruling] is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). The appealing party bears the burden of establishing that the Magistrate Judge's decision was clearly erroneous or contrary to law. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

## B. Fair Credit Billing Act and Federal Regulation Z

Plaintiffs assert federal-law claims under the FCBA and Federal Regulation Z against TD Bank.[4] The FCBA, enforced through the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and implemented through Federal Regulation Z, 12 C.F.R. § 1026, "requires creditors to investigate and correct

---

authority in the District of New Jersey is divided on this question.") The Third Circuit has not directly addressed what standard a district court should use in reviewing a Magistrate Judge's denial of a motion to amend which results in the court losing subject matter jurisdiction.

Nevertheless, the Third Circuit has repeatedly stated that a motion for leave to amend is non-dispositive for purposes of 28 U.S.C. § 636. *See, e.g., Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) ("Because we find that the Magistrate Judge's denial of [the] motion for leave to amend is nondispositive," appellants were required to comply with Rule 72(a) in order to challenge the magistrate judge's decision that denied the plaintiffs leave to amend sole federal claim); *see also Kenny*, 489 F. App'x at 630 n.2 (3d Cir. 2012) (declining to resolve the issue but stating that "[s]tatutory and precedential authority largely rejects" the argument that motion to amend that in practical terms results in a dismissal should be construed as a dispositive motion for purposes of 28 U.S.C. § 636).

Regardless of which standard is applied here—*de novo* or clear error—for the reasons provided herein, the Court arrives at the same conclusion.

[4] Plaintiffs also assert state-law claims against TD Bank (Count 1) and BoA (Count 4 and 5).

5

billing errors." *See Alves v. Verizon*, 2010 WL 2989988, at *7 (D.N.J. July 27, 2010) (quoting *Dimedio v. HSBC Bank*, 2009 WL 2413669, at *2 (D.N.J. Aug 4, 2009)).

As established in my previous opinion, under the FCBA, to trigger a creditor's obligation either to credit a disputed charge or conduct a reasonable investigation, "a consumer must submit a written notice of billing error within 60 days after receiving the statement that contains the error." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (citing 15 U.S.C. § 1666(a)). Written notice must be delivered to the address identified by the creditor for submitting billing disputes at the time the consumer opened the account. 15 U.S.C. § 1666(a) (cross-referencing 15 U.S.C. § 1647(b)(10), requiring creditors to specify such an address); *see also Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 451 (D.N.J. 2010).

A creditor's obligations under the FCBA are only triggered if the consumer complies with the statute's procedural notice requirements. If a creditor identifies a billing error within sixty days after a statement is issued and satisfies the FCBA's procedural notice requirements, pursuant to Section 1666(a)(3)(A), a creditor has two obligations:

> First, within 30 days of receiving that written notice, it must acknowledge receipt to the consumer in writing. 15 U.S.C. § 1666(a)(3)(A). Second, within two billing cycles and "in no event later than ninety days" after the consumer files his written dispute, it must either (1) "make appropriate corrections" to the consumer's account, "including the crediting of any finance charges on amounts erroneously billed," or (2) "conduct[ ] an investigation" into the dispute and "send a written explanation" to the consumer "setting forth to the extent applicable the reasons why the creditor believes the account … was correctly shown in the statement." *Id.* § 1666(a)(3)(B)(i)-(ii). The creditor must take these steps "before making any attempt to collect the disputed amount."

6

*Krieger*, 890 F.3d at 433-34 (citing *Am. Express Co. v. Koerner*, 452 U.S. 233, 234, 236-37 (1981)); *see also Piller v. JPMorgan Chase Bank*, 2020 WL 8186165, at *3 (D.N.J. Oct 23, 2020).

### C. Plaintiffs' Motion to Amend

In my opinion dismissing the Amended Complaint, I found that Plaintiffs two federal claims against TD Bank were "inadequately pled as a matter of law." (DE 31 at 9.) I noted that the Amended Complaint failed to "allege that the Plaintiffs complied with the specific written notice requirements stated in both the FCBA and Federal Regulation Z." (DE 31 at 9.) Instead, Plaintiffs only alleged that after discovering the fraud, "[t]hey immediately went back to the TD Bank branch and spoke with Ronell McDaniel, Branch Manager and Vice President." (DE 31 at 9 (citing Am. Compl. ¶ 7).) In the absence, however, of any allegations suggesting that the Plaintiff provided the required written notice of the billing error to TD Bank, I found that "TD Bank's duties under the FCBA and Federal Regulation Z would not be triggered." (DE 31 at 9.)

Judge Kiel found Plaintiffs' proposed amendments in the 2AC to be futile for two reasons. First, Judge Kiel acknowledged that the Plaintiffs added allegations suggesting that they "provided notification of the billing dispute" to TD Bank, "albeit to the wrong address." (DE 44 at 17:05-11.) Nevertheless, Judge Kiel rejected Plaintiffs' argument that their September 21, 2020 "written notice to the [TD Bank] branch office in Nutley should excuse strict compliance with the notice requirement," as the FCBA and Regulation Z specifically require "written notice to the billing dispute *address on the creditor's statement*." (DE 44 at 17:18-22) (emphasis added). Accordingly, Judge Kiel found that the FCBA's and Regulation Z's strict notice requirements were not satisfied, even though the Plaintiffs received a "response from … TD Bank's investigator." (DE 44 at 17:25-18:07.)

Second, assuming that the Plaintiffs provided sufficient notice, therefore triggering TD Bank's obligations under federal law, Judge Kiel found that "TD Bank fully satisfied its obligations" in its letter to Plaintiffs. (DE 44 at 18:08-

7

13.) Judge Kiel highlighted that TD Bank provided written receipt of Plaintiffs' letter, on September 23, 2020, writing that: "TD Bank's global security and investigation department, GSI, is in receipt of your claim." (DE 44 at 19:05-08.) Further, Judge Kiel stated that TD Bank's letter provided a sufficient written explanation, writing that with respect to Plaintiffs "online transfer from [their] HELOC … to [their] deposit account, the online banking agreement governing [their] accounts provides that: '[w]e are entitled to act on transaction(s) or any other instructions received under your user name, and you agree that any action taken under our user name will have the same effect as you signature authorizing the transaction." (DE 44 at 19:09-17; *see also* 43-2, Ex. D.)

On appeal, Plaintiffs submit similar arguments as the ones provided in their motion for leave to amend briefing. Plaintiffs argue that the "[t]ransmittal of the notice of claim to TD Bank's branch office rather than the Lewiston, Maine is a technical, immaterial and irrelevant fact." (DE 43-1 at 9.) Because TD Bank's branch office sent Plaintiffs' letter "to TD Bank's investigative office on the same day, or at the very least, the next day after receipt of the claim," Plaintiffs argue that they provided actual notice as required by the FCBA and Regulation Z. (DE 43-1 at 8.) Plaintiffs also assert that TD Bank's September 23, 2020 letter providing the results of its investigation of Plaintiffs' claim was "conclusory and cursory," thus violating the FCBA and Regulation Z. (DE 43-1 at 9.)

I find that Judge Kiel's denial of Plaintiffs' motion to amend was not clearly erroneous or contrary to law. As established in that opinion, both the FCBA and Regulation Z prescribe specific written notice requirements to trigger the creditor's obligation to either credit a disputed charge or conduct a reasonable investigation. (DE 31 at 9.) This condition precedent is not ambiguous, but clearly provides that the creditor's obligations are only prompted if the "creditor … receives *at the address disclosed* under section 1637(b)(10) of this title a written notice … *from the obligor.*" 15 U.S.C. § 1666(a) (cross-referencing 15 U.S.C. § 1647(b)(10)) (emphasis added); *see also* 12 C.F.R. § 1026.13.

Attached to the Plaintiffs' brief is a statement reflecting the period of June 24, 2020 through July 23, 2020. (DE 42-2, Ex. A.) This statement explicitly states that "if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, … write to":[5]

> TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377

(DE 42-2, Ex. A.) Instead of providing written notice to the Lewiston, Maine address, *i.e.*, "the address disclosed under section 1637(b)(10) of this title", Plaintiffs' lawyer sent their letter to TD Bank's branch office in Nutley, New Jersey. (DE 42-2, Ex. C.) Based on a plain reading of the FCBA and Regulation Z, the Plaintiffs have not satisfied the written notice requirements and I discern no error in Judge Kiel's order to that effect.

Plaintiffs argue, however, that TD Bank still received actual notice of Plaintiffs' claim because "TD Bank's branch office immediately transmitted counsel's letter to TD Bank's investigative office on the same day, or at the very least, the next day after receipt of the claim." (DE 43-1 at 8.) According to Plaintiffs, TD Bank was not prejudiced by the "transmittal of Plaintiffs written notice of claim to TD Bank's branch office" and that the transmittal of Plaintiffs' claim to TD Bank's Deposit Operations Department in Lewiston, Maine "is a technical, immaterial and irrelevant fact." (DE 43-1 at 9.)

Notably, Plaintiffs have provided no case law, legislative history, and/or regulatory guidance that supports such a proposition. This is not to say that

---

[5]    I note that the at-issue statement also provides a phone number for customers to call with respect to alleged billing errors, described as the "phone number listed on the front of [the] statement." (DE 42-2, Ex. A.) The Court need not address the question of whether calling the provided number about a billing error substitutes as adequate notice under the FCBA and Regulation Z because neither the 2AC nor the briefing suggests that the Plaintiffs called this number to provide notice of their billing error claim. The 2AC only alleges that Gerald Gregor called TD Bank's Loan Department "about the fact they had not received a July statement" and that the Plaintiffs "had telephone conversations with Ronell T. McDaniel, Vice-President and manager of TD Bank's branch, and Frank Perrone, Senior Investigator in the Fraud Department at TD Bank." 2AC ¶¶14, 16.

the Court is not sympathetic to the Plaintiffs' position. TD Bank is surely better positioned than consumers, like the Plaintiffs, to know and understand the procedures and to route a consumer complaint to the proper department. I note the following circumstances: (1) TD Bank provided a phone number, along with a P.O Box address, in its billing statements to inquire about potential billing errors; (2) the local TB Bank branch admittedly received written notice from the Plaintiff, but they themselves forwarded the notice to a different department than the one identified in the billing statement for handling billing error inquiries; and (3) TD Bank's Global Security & Investigations Department ("GSI") confirmed receipt of Plaintiffs' claim, investigated said claim, and explained in a letter why TD Bank ultimately denied the claim.

That said, the 2AC still does not allege that the written notice was ultimately received or reviewed by the Deposit Operations Department—the address that TD Bank furnished for handling billing error inquiries. There has not been strict compliance with the FCBA and Regulation Z.

But even if I were inclined to find substantial compliance and excuse any flaw in notice, I would still be constrained to affirm Judge Kiel's decision. Assume *arguendo* that the Bank received proper notice. As previously stated, if a creditor receives timely written notice of a potential billing error from the consumer, a creditor is obligated to do the following: (1) acknowledge receipt to the consumer in writing within 30 days; (2) within two billing cycles, and "in no event later than ninety days" after the consumer files a written dispute, either "make appropriate corrections" to the consumer's account or "conduct[ ] an investigation" into the dispute and "send a written explanation" to the consumer "setting forth to the extent applicable the reasons why the creditor believes the account … was correctly shown in the statement." 15 U.S.C. § 1666(a)(3)(B)(i)-(ii).

Judge Kiel found that TD Bank satisfied both of these obligations, citing in particular the Bank's September 23, 2020 letter to Plaintiffs. TD Bank's letter, he found, confirmed timely receipt of Plaintiffs' (defective) notice. Judge Kiel found in addition that the letter's written explanation of the rejection of

10

Plaintiffs' claim was sufficient. The letter explained that, with respect to Plaintiffs "online transfer from [their] HELOC ... to [their] deposit account, the online banking agreement governing [their] accounts provides that: '[w]e are entitled to act on transaction(s) or any other instructions received under your user name, and you agree that any action taken under our user name will have the same effect as you signature authorizing the transaction." (DE 44 at 19:09-17; *see also* 43-2, Ex. D.) Judge Kiel also noted that the letter explained that the Plaintiffs themselves "went to the TD Bank Nutley NJ store and initiated a wire transfer in the amount of $29,470" and that "TD Bank facilitated the wire transfer," as per Plaintiffs' instructions. (DE 44 at 19:09-17; *see also* 43-2, Ex. D.)

To disagree with the Bank's explanation is not to say that the Bank failed to furnish an explanation. Plaintiffs contend that TD Bank's letter was merely a "non-descriptive and conclusory statement," falling short of the "required disclosure," but the letter unequivocally demonstrates that TD Bank satisfied its statutory obligations. TD Bank's letter clearly provides stated reasons for denying Plaintiffs' claim: (1) Plaintiffs went to their local TD Bank branch and initiated the at-issue wire, which TD Bank subsequently facilitated; and (2) that pursuant to TD Bank's Online Banking Agreement, TD Bank was entitled to act on that transaction. While the Plaintiffs may ultimately disagree with the outcome of the investigation process and the level of specificity in TD Bank's explanation, the FCBA and Regulation Z only requires a bank to conduct an investigation and provide an explanation for the ultimate outcome—which TD Bank has done here. Therefore, Judge Kiel's finding was neither clearly erroneous nor contrary to law. Indeed, I have before me the same record that was before Judge Kiel, and I am applying the same legal principles to it, so on *de novo* review my conclusion would be the same.

Accordingly, I will affirm Judge Kiel's decision denying leave to file the 2AC because the new allegations "do not satisfy the [FCBA and Regulation Z's] strict notice requirement," DE 44 at 17:18-18:07, and in the alternative,

11

Case 2:21-cv-05255-KM-ESK   Document 49   Filed 02/17/22   Page 12 of 12 PageID: 599

because TD Bank's September 23, 2020 letter complied with the FCBA and Regulation Z. (DE 44 at 19:05-20:15.) Amendment would therefore be futile.

### III.   CONCLUSION

Plaintiffs have been the victims of a heartless fraudster. Unfortunately, they did not detect the fraud quickly enough to stop TD Bank from transferring the funds as they had instructed the bank to do. The bank, however, did not fail in its duty to state its reasons for denying their claim, and the loss cannot be shifted to the bank on that basis.

For the reasons set forth above, Plaintiffs' appeal of the Magistrate Judge's order is **DENIED**, and that order is **AFFIRMED.** It appearing that any further attempt to amend would be futile, the case will be dismissed with prejudice. A separate order will issue.

Dated: February 17, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**